## The Wiborg and Hanna Company, Appellee, v. David K. Jeffris et al., Appellants.

### Gen. No. 15,379.

VENDOR AND VENDEE—*when acceptance not established. Held,* under the evidence in this case, that it was not established that the lumber retained had been unconditionally accepted by the vendee and that a recovery could not be sustained for the purchase price, it not appearing that such lumber was up to the contract grade.

Appeal from the Superior Court of Cook county; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and remanded. Opinion filed March 21, 1911. Opinion modified and refiled and rehearing denied April 18, 1911.

Statement by the Court.   May 10, 1905, appellants (defendants below) sent to appellee at Cincinnati, Ohio, a letter, ordering certain lumber to be delivered to them, F. O. B. cars at Kensington, Illinois, the letter specifying the quantity, quality and price respectively of each of the different grades ordered. Upon this order appellee shipped lumber in carload lots from time to time, until the entire amount called for (aggregating eleven cars) was sent, and sent to appellants from time to time, as the cars of lumber were sent, its bills of lading for the lumber in each car. As the carloads of lumber were received, appellants turned them over to the Pullman Company, by which they were unloaded, and the lumber inspected and measured,—appellants remitting for the amount which it is claimed was in the respective carloads as they were thus received from time to time.

Appellants' letter called for a given quantity of lumber of each of the following designations: 1st and 2nd four quarter poplar, select four quarter poplar, 1st and 2nd six quarter poplar, and six quarter clear bright saps, and at prices mentioned for each.

Appellee claims to have shipped the quantity of each called for, while appellants contend that, though they received all of the lumber shipped, it was not of the grades ordered, but, as the cars were unloaded and the lumber inspected, it was found that, while some of it was of the grades ordered, quite a portion was below grade. So that, while they had not ordered any "common," yet of the lumber received, considerable was of that grade.

It appears that appellants remitted from time to time with detailed statement for the carloads as received, and claim to have paid in full at the contract price for all lumber they received, which was of the grades ordered, and for the remainder,—the common, —at what it was practically conceded was its fair market price.

It further appears that the lumber called "common," for which appellants paid at the market price of that grade of lumber, and for which appellee claims it was entitled to the contract price, was undisposed of when the suit was brought, and that appellants had theretofore offered to have it reloaded upon cars upon payment of $1.00 per thousand for reloading and held for appellee,—which offer was declined by appellee. So, claiming to have shipped the quality and quantity specified, appellee sued for the full contract price, and insisted not only that the lumber sent was up to the requirements, but, even if it were not, that, after accepting and using or selling it to the Pullman Company, appellants were bound to pay for it at contract price.

Appellants contend (1) that, as the lumber was sold by description, there was a warranty that it should be as described, and that they were justified in' accepting and using and paying for, at the contract price, so much of it as was of the grade called for, and that they did not thereby lose the right to insist that some of the lumber received was not up to the grade ordered, and that their liability therefor was the market price of such inferior lumber; (2) that their settlements, as mailed to appellee from time to time and retained by it, constituted a full accord and satisfaction; (3) that the trial court erred in allowing witness for appellee to testify as to conversations claimed to have been had between Jeffris (one of the appellants) and Irwin, an employe of appellee, prior to the making of the written contract; (4) that the trial court erred in refusing to allow them to cross examine a witness, Jeffris, called by appellee.

ADAMS & FROEHLICH, for appellants.

FRED H. ATWOOD, FRANK B. PEASE and CHARLES O. LOUCKS, for appellee.

MR. JUSTICE BALDWIN delivered the opinion of the court.

The questions presented for our consideration upon this record are not numerous. Appellants ordered by letter given quantities of specified grades of lumber at stated prices for the different grades. The real controversy grows out of the fact that, while appellee claims to have shipped the grades and quantities ordered, and as correctly shown with prices by its several invoices accompanying the separate carload lots in which it was shipped, appellants contend that the quantities of each of the grades purchased in the respective cars were not as shown upon the several invoices, and that a portion of the lumber received was of lower grade than any ordered by them, and constituted only what was termed "common." To this appellee replies that appellants could not retain the carload lots of lumber,—use such as they conceded was up to the grade ordered,—and refuse to accept the remainder, but that they must either accept or reject the lumber according to invoice, treating each carload as a unit.

We recognize the law to be that, where one has ordered a particular kind of merchandise delivered in carload lots, if, upon its delivery, and with opportunity for inspection, he accepts and uses it, he is bound by such acceptance.

In this case, delivery was to be made at Kensington. Two or three grades of lumber were included in the order, and in the invoice from the seller accompanying each car. Inspection and measurement by the buyer were essential to determine the grades and quantities. This was had as the cars were received, and the purchasers duly prepared statements showing the grades and quantities of lumber in each car, according to their inspection and measurement, and with such statement or "settlement," as it was called, remitted to appellee their check therefor. These checks thus accompanying the statements or "settlements" were ac-

cepted and used by the appellee with knowledge that they were in payment of a portion of the lumber according to inspection and measurement by the appellants.

The first carload was shipped May 19, 1905, and this was followed by the others on May 20th, June 15th, 21st, 22nd, 24th, and 30th, July 7th, 12th, 13th and 14th. Apparently in conformity with the terms of the contract as to payment, appellants remitted for the several carload lots on June 22nd, July 10th and 26th, August 4th and 11th, and September 26th and 28th. Accompanying these remittances from appellants for the several cars were statements showing that the cars contained a less quantity of the respective grades than the invoices called for, and that some of it was of such inferior quality as to be classed as "common." Appellee, upon receiving the first remittance with such statement, asked payment for the "common," and was informed that it would be paid for when disposed of.

On July 5th, appellants wrote to appellee, distinctly notifying it that they would not accept the stock as graded by it. On July 31st, appellee wrote again calling attention to the small difference still due on the two cars. On August 8th appellee again wrote, objecting to the deduction of switching charges on the various cars, and on the day following appellants wrote back offering to re-load the lumber and hold it subject to appellee's order.

On the 28th of September appellants sent to appellee check for $54.19, which was specifically stated to cover the switching charges theretofore erroneously deducted and in payment for the "common" lumber in two cars, particularly designated. Again, on October 28th appellants wrote appellee that the lumber in controversy was still on hand, and offered to have it reloaded at $1 per thousand, and calling attention to the fact that their statements or settlements had been accepted without objection.

Under this state of facts, appellee was not entitled to recover the contract price for the grades and quantities of lumber it claimed to have shipped. It clearly appears that appellee continued shipments after being distinctly informed that appellants would not accept the stock according to its grading, and appellee accepted the checks sent by appellants in payment for the carload lots according to their grading and measurements. And not only so, but the check of September 28th, which not only included the switching charges previously complained of, but which, also, in terms, paid for the "common" lumber, according to their contention, was accepted by appellee, and this acceptance of the check clearly constituted a settlement of the entire controversy so far as these two cars were concerned.

We are not able, from the record before us, to ascertain the details with respect to the other shipments and payments therefor. This information will be afforded by another trial. The court below clearly erred in instructing the jury to return a verdict for the appellee. Even had appellee been entitled to a verdict, the basis assumed by the court was wrong,—for he took as a basis of calculation the invoice prices claimed by appellee, and deducted only the aggregate of the checks to appellee and the freight paid by appellants, thus entirely ignoring the discounts to which appellants were entitled, and, also, the further fact that, for at least a portion of the carload lots, appellee was certainly bound by its acceptance of the checks sent in payment therefor.

Upon the case made, it is not important that the court allowed Irwin to testify to alleged transactions prior to the making of the written contract, but, if such testimony were admitted, it, with the rebutting testimony of Jeffris, should have gone to the jury. In the light of the correspondence between the parties, we do not regard either as very important.

Appellants' contention that the court erred in re-

fusing to allow their cross-examination of Jeffris, cannot be sustained.

Jeffris, as a witness for appellee, testified that the lumber in question had been sold and turned over by them to the Pullman Company. This testimony was for the purpose of showing that appellants had accepted the lumber in question and were exercising dominion over it, and it was not error to refuse to allow appellants, upon cross-examination, to show upon what basis they settled with the Pullman Company, for that was entirely immaterial.

Because of the errors indicated, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*